UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| JACK L. ROBBINS,<br><br> Plaintiff,<br><br> v.<br><br>COMMISSIONER OF SOCIAL SECURITY, *sued as Martin O'Malley, Commissioner of the Social Security Administration*,[1]<br><br> Defendant. | Case No. 1:23-cv-00183-SLC |

## OPINION AND ORDER

Plaintiff Jack Robbins appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying his application under the Social Security Act (the "Act") for Disability Insurance Benefits ("DIB"). (ECF 1). On August 7, 2023, Robbins filed his opening brief (ECF 14), to which the Commissioner timely responded (ECF 18). Robbins filed a reply brief on October 27, 2023 (ECF 19), making the matter ripe for review. For the following reasons, the Commissioner's decision will be REVERSED and the matter REMANDED for further proceedings.

### I. FACTUAL AND PROCEDURAL HISTORY

Robbins applied for DIB in July 2020, alleging disability as of June 1, 2020. (ECF 12 Administrative Record ("AR") 27, 243).[2] Robbins's claim was denied initially and upon

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023, and thus, pursuant to Federal Rule of Civil Procedure 25(d), he is automatically substituted for Kilolo Kijakazi in this case. *See Melissa R. v. O'Malley,* No. 1:22-cv-02404-TAB-TWP, 2023 WL 8866397, at *1 n.1 (S.D. Ind. Dec. 22, 2023).

[2] The AR page numbers cited herein correspond to the ECF-generated page numbers displayed at the top center of the screen when the AR is open in ECF, rather than the page numbers printed in the lower right corner of each page.

reconsideration. (AR 124-25). After a timely request (AR 160, 178), a hearing was held on January 20, 2022, before administrative law judge ("ALJ") Kathleen Winters, at which Robbins, who was represented by counsel, and a vocational expert testified. (AR 66-109). On August 22, 2022, the ALJ rendered an unfavorable decision to Robbins, concluding that he was not disabled because he could perform a significant number of unskilled, light-exertional jobs in the national economy despite the limitations caused by his impairments. (AR 27-39). Robbins's request for review was denied by the Appeals Council (AR 6-9), at which point the ALJ's decision became the final decision of the Commissioner, *see* 20 C.F.R. § 404.981.

Robbins filed a complaint with this Court on May 1, 2023, seeking relief from the Commissioner's decision. (ECF 1). His sole argument on appeal is that the ALJ erred by failing to consider Robbins's standing and walking restrictions in the residual functional capacity ("RFC") assessment. (ECF 14 at 4).

At the time of the ALJ's decision, Robbins was fifty-three years old (AR 37, 243), had a high school education (AR 37, 318), and had relevant work experience as millwright, millwright supervisor, commercial cleaner, machine feeder, and automobile body repairer (AR 37; *see also* AR 319). In his application, Robbins alleged disability due to grade 1 esophageal varices, liver cirrhosis with ascites, unintentional weight loss of 35 lbs in 60 days, portal hypertensive gastropathy, gastrointestinal bleed, thrombocytopenia, hematemesis, hypomagnesemia, and hypocalcemia. (AR 317).

## II.  STANDARD OF REVIEW

Section 405(g) of the Act grants this Court the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation and quotation marks omitted). The decision will be reversed "only if [it is] not supported by substantial evidence or if the Commissioner applied an erroneous legal standard." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (citation omitted).

To determine whether substantial evidence exists, the Court "review[s] the entire administrative record, but do[es] not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Id.* (citations omitted). "Rather, if the findings of the Commissioner . . . are supported by substantial evidence, they are conclusive." *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted). "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

### III.  ANALYSIS

*A. The Law*

Under the Act, a claimant seeking DIB must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is currently unemployed in substantial gainful activity, (2) whether he has a severe impairment, (3) whether his impairment is one that the Commissioner considers conclusively disabling, (4) whether he is incapable of performing his past relevant work, and (5) whether he is incapable of performing any work in the national economy. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001); *see also* 20 C.F.R. § 404.1520.[3] "[A]n affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled." *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (citation omitted). "A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Id.* (citation omitted). The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868.

## B. The Commissioner's Final Decision

On August 22, 2022, the ALJ issued a decision that ultimately became the Commissioner's final decision. (AR 27-39). As a threshold matter, the ALJ noted that Robbins was insured for DIB through December 31, 2025. (AR 29). At step one, the ALJ concluded that Robbins had not engaged in substantial gainful activity since June 1, 2020, his alleged onset date. (*Id.*). At step two, the ALJ found that Robbins had the following severe impairments: chronic liver disease, cirrhosis, and pancreatitis. (*Id.*).

---

[3] Before performing steps four and five, the ALJ must determine the claimant's RFC or what tasks he can do despite his limitations. 20 C.F.R §§ 404.1520(a)(4), 404.1520(e), 404.1545(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. *Id.* § 404.1520(e).

At step three, the ALJ concluded that Robbins did not have an impairment or combination of impairments severe enough to meet or equal a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 32). The ALJ then assigned Robbins the following RFC:

> [T]he claimant has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) except he can occasionally climb . . . ramps or stairs, stoop, kneel, crouch, or crawl; can never climb of ladders, ropes, or scaffolds, or balance as that term is used vocationally. With work that can be learned in 30 days, or less, with simple, routine tasks; is able to remain on task, persist, and maintain pace in two-hour increments.

(AR 33).

The ALJ found at step four that Robbins was not able to perform his past relevant work. (AR 37). However, at step-five, the ALJ concluded that given his age, education, work experience, and RFC, Robbins could perform other unskilled, light-exertional jobs that exist in substantial numbers in the national economy, including cashier II, mail clerk, and fast food worker. (AR 38). As such, Robbins's application for DIB was denied. (AR 39).

## C. RFC

Robbins's only argument on appeal is that the ALJ erred in failing to assign greater limitations in his ability to walk or stand. Specifically, Robbins claims that the ALJ did not take into account the pain caused by his chronic pancreatitis in evaluating his functional abilities.[4] This argument is persuasive and for this reason, this case will be remanded for further proceedings.

The RFC is "the individual's *maximum* remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis," meaning eight hours a day, for five days a week. SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996) (bold emphasis omitted).

---

[4] Robbins also argues that the ALJ discounted his use of an assistive device, and that she over-relied on a January 2022 medical opinion. Because Robbins's first argument is persuasive, the Court need not address Robbins's remaining arguments.

That is, the "RFC does not represent the *least* an individual can do despite his or her limitations or restrictions, but the *most*." *Id.* (footnote omitted); *see also Young v. Barnhart*, 362 F.3d 995, 1000-01 (7th Cir. 2004); 20 C.F.R. § 404.1545(a)(1). When determining the RFC, the ALJ must consider all medically determinable impairments, mental and physical, even those that are non-severe. 20 C.F.R. § 404.1545(a)(2); *see also Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citations omitted). "The ALJ must evaluate the record fairly. Thus, although the ALJ need not discuss every piece of evidence in the record, the ALJ may not ignore an entire line of evidence that is contrary to the ruling." *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003) (citations omitted); *see also John B. v. Saul*, No. 2:18-cv-00223-JVB-JEM, 2019 WL 4233744, at *2 (N.D. Ind. Sept. 5, 2019).

    Robbins avers his chronic pancreatitis exacerbates his pain and fatigue and affects his functional ability. The medical record reflects that his pancreatitis landed him in the hospital twice, once in April 2021, and once in May 2021. (AR 885, 1041).[5] In the ensuing months after his hospitalizations, Robbins continued to experience pain which was attributed to his pancreatitis. For example, during a May 10, 2021, office visit with his primary care physician, Ron L. Sloan, M.D., Robbins was speaking with a "grunting voice," was "rocking side to side from abdominal pain," and presented with generalized abdominal tenderness. (AR 1047). Beginning June 2021, Robbins's providers began characterizing his pancreatitis as "chronic" instead of "acute," a characterization which was later confirmed by an endoscopy performed in January 2022. (AR 961, 1100). On September 17, 2021, during an office visit with Dr. Sloan, Robbins continued to speak with a grunting voice and was complaining of constant pain, again presenting with generalized abdominal tenderness. (AR 1025). The following month, Robbins

---

[5] Robbins also visited the hospital in January 2021 for abdominal pain. (AR 751).

presented with diffuse abdominal tenderness, and it was noted that he experienced significant abdominal pain which had "acutely worsened in the past few months." (AR 965-66). During a November 2, 2021, office visit, Dr. Sloan stated that Robbins had generalized abdominal pain resulting from his pancreatitis and was moaning, still presenting with diffuse generalized abdominal tenderness. (AR 1020). Robbins continued to report abdominal pain on January 11, 2022. (AR 1132). Beyond the documented pain, he was "ill-appearing" during his May, July, and September 2021 office visits. (AR 1025, 1034, 1047).

The medical record also demonstrates that the medication he took failed to mitigate the pain. Indeed, after the onset of his chronic pancreatitis, he started taking different narcotics but those did little to assuage his pain. In May 2021, he was prescribed oxycodone. (AR 1049). In July 2021, he received a celiac plexus block, which provided no relief. (AR 966, 973). Dr. Sloan noted in September 2021 that he was having a "[v]ery difficult time trying to control symptoms." (AR 1027). In October 2021, Robbins started taking hydromorphone as a replacement for oxycodone because the "[p]ain never goes away," and because he still experienced 6/10 pain even with medication, and as of November 2021, his intake of hydromorphone was characterized as "high". (AR 981, 984, 1019). Efforts at managing Robbins's pain continued in 2022, as Robbins continued to experience pain caused by his chronic pancreatitis in January 2022, which led him to begin using a pain pump in July of that same year. (AR 57-58, 1132).

In turn, Robbins's abdominal pain is relevant to his ability to walk or stand because the record reflects that the distance he is able to travel is limited by his pain. (AR 924 (noting "[d]istance limited by [abdominal] pain.")). Yet, despite acknowledging Robbins's chronic pancreatitis and concluding his condition was "severe" (*see* AR 29), the ALJ only broached upon Robbins's abdominal pain and did not discuss the difficulty he experienced with controlling

symptoms with medication. At the outset of her decision, the ALJ concluded that Robbins's statements about the "intensity, persistence, or functionally limiting effects of pain . . . [were] not substantiated by objective medical evidence . . . ." (AR 33). The ALJ then relayed Robbins's testimony regarding the "pain in his belly," and his fatigue, that "walking and sitting up straight worsen his pain," that he was able to walk "just 25 yards with his walker," and stand "for just five minutes at a time." (AR 34). As for the record, the ALJ noted Robbins had pancreatitis for which he had "taken various types/dosages of medications." (*Id.*). She noted Robbins had visited the hospital in January 2021 for abdominal pain (AR 36) but otherwise did not discuss the fact that he was diagnosed with chronic pancreatitis nor the increasing pain he experienced as a result thereof.

Rather, the ALJ noted that there was no evidence of "muscle atrophy or significant deficits in muscle strength, reflexes, or sensation on his extremities." (AR 35). She also noted Robbins's gait appeared normal outside of the "short-lived hospital stay in late April-early May," and that he regularly presented with full strength in all extremities. (*Id.*). The ALJ parsed the record regarding his fatigue, finding inconsistent reports of fatigue between June 2020 and January 2022. (*Id.*). She also noted that Robbins had never presented to a medical appointment with an assistive device, except at a July 2021 office visit with his treating physician when he was seen using a cane. (AR 35-36).

As explained by Robbins, his April 2021 hospital record shows that his ability to walk distances was hampered by his abdominal pain—not just his fatigue. (*See* AR 927). Yet, the ALJ omitted to analyze how the pain he experienced impacted his functional ability to stand or walk, instead finding that his statements regarding his pain were inconsistent with the record. *See Gibbs v. Saul*, No. 3:19-CV-664-TLS-MGG, 2020 WL 7022487, at *6 (N.D. Ind. Nov. 30, 2020)

(remanding where ALJ ignored evidence of constant abdominal pain which affected claimant's ability to stand and walk for long periods of time). But the medical record does support his reports of pain, especially when considering Robbins was prescribed heavy doses of narcotics for months. *See Curtis v. Astrue*, 623 F. Supp. 2d 957, 970 (S.D. Ind. 2009) ("[T]he ALJ failed to consider whether the litany of medications, including narcotic pain medication, could have supported Plaintiff's complaints of pain as well as the extent of her limitations."); *Scrogham v. Colvin*, 765 F.3d 685, 701 (7th Cir. 2014) ("[A] claimant's election to undergo serious treatment, such as having surgery and taking 'heavy doses of strong drugs,' indicates that the claimant's complaints of pain are likely credible." (citing *Carradine v. Barnhart,* 360 F.3d 751, 755 (7th Cir. 2004)).

Instead, the ALJ concluded that the RFC did not necessitate greater limitations due to normal findings in Robbins's muscle strength, reflexes, and extremities. Contrarily to the ALJ's conclusion, however, findings of normal muscle strength, reflexes, or sensation are not necessarily inconsistent with chronic pain. "[A]s several courts in this circuit have acknowledged, even full muscle strength is consistent with impairments that cause pain and thereby affect a claimant's functional limitations, including limited abilities to stand or walk." *Otis S. v. Saul*, No. 1:18-CV-372-WCL-JPK, 2019 WL 7669923, at *3 (N.D. Ind. Dec. 19, 2019); *see also id.* at *3 n.4 (collecting cases); *Fansler v. Astrue*, No. 1:07-CV-00081, 2008 WL 474205, at *7 (N.D. Ind. Feb. 19, 2008) ("[I]t appears that the ALJ succumbed to the temptation to 'play doctor' when he independently concluded that normal muscle strength is inconsistent with chronic pain.").[6] "Although the ALJ is not required to address every piece of evidence or testimony presented, the ALJ "has a basic obligation to develop a full and fair record

---

[6] Further, as explained by Robbins, the normal results cited by the ALJ largely predated the onset of his chronic pancreatitis.

9

and must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Gibbs*, 2020 WL 7022487, at *6 (internal citations omitted) (citing *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014)).

Here, there is ample medical evidence demonstrating an increase in pain that may affect Robbins's functional capacity but no corresponding analysis in the ALJ's decision regarding the impact, if any, on Robbins's ability to walk or stand. In other words, it appears the ALJ selected medical evidence to support her conclusion that Robbins could walk or stand for six hours, while ignoring an entire line of evidence supporting a conclusion contrary to her ruling, that is, medical evidence relaying Robbins's pain and chronic pancreatitis post-dating July 2021. *See Golembiewski*, 322 F.3d at 917.

Robbins also contends that the ALJ over-relied on the state agency physicians' opinions—issued before and simultaneously to his diagnosis of chronic pancreatitis—in concluding he could walk and stand six hours. (ECF 14 at 14-15). On this point, the Commissioner argues that the ALJ included more restrictive limitations in the RFC than the state agency physicians did in their assessment (namely, restrictions in climbing ramps or stairs, stooping, kneeling, crouching, or crawling), which underscores the reasonableness of her opinion. (ECF 18 at 11; *see* AR 33-34). But Robbins's point is well-taken. Joshua Eskonen, D.O., and J. Sands, M.D., concluded at the initial and reconsideration levels that Robbins could perform light work and could stand or walk for six hours with normal breaks. (AR 119-20, 130-31). However, those opinions were issued in November 2020 and May 2021, respectively. (*Id.*). "[B]oth agency reviewers lacked the benefit of later treatment records" reflecting Robbins continued to experience abdominal pain, which the use narcotics failed the control. *Otis S.*, 2019 WL 7669923, at *4. Among other things, his medical record documents the progression of his

pancreatitis from acute to chronic, as confirmed by an endoscopy performed in January 2022, and the difficulty to treat his pain with "high" doses of narcotics. (AR 1100).

While the ALJ included greater restrictions in her RFC analysis than the state agency physicians did in their opinions, it is possible the state agency physicians would have included restrictions in standing or walking if they had access to later information confirming greater functional limitations due to Robbins's worsening abdominal pain. Put simply, adding limitations relating to climbing, stooping, kneeling, crouching, or crawling was not enough to cure the deficiency in the state agency physicians' opinions. "ALJs may not rely on outdated opinions of agency consultants 'if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion.'" *Lambert v. Berryhill*, 896 F.3d 768, 776 (7th Cir. 2018) (quoting *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018)); *Thomas v. Colvin*, 826 F.3d 953, 960 (7th Cir. 2016) ("[T]he ALJ erred by accepting Dr. Ruiz and Dr. Sands's reviews of the evidence uncritically despite the fact that they never examined Thomas and did not have the benefit of much of the 2011 treatment records when they created their opinions." (collecting cases)). The physical examinations post-dating the state agency physicians' opinions include potentially decisive evidence indicating Robbins's impairments were worsening and contain new evidence corroborating his subjective symptoms of pain. *See Kemplen v. Saul*, 844 F. App'x 883, 888 (7th Cir. 2021), as amended in part on reh'g (June 21, 2021) ("[T]he ALJ must seek an additional medical opinion if there is potential decisive evidence that postdates the state agency consultant's opinion."). Therefore, in this particular instance, the state agency physicians' opinions do not constitute "substantial evidence" to support the conclusion that Robbins could walk or stand for six hours. *See Schmidt*, 395 F.3d at 744.

The Commissioner also argues that the ALJ did not err in her assessment because she rightfully observed that Robbins did not use assistive devices during his medical appointments. But this observation is not necessarily inconsistent with Robbins's inability to walk or stand six hours when he experiences abdominal pain. "As the Seventh Circuit has repeatedly observed, a claimant's demonstrated ability to walk without an assistive device during a consultative examination . . . 'does not demonstrate an ability to stand for 6 hours.'" *Otis S.*, 2019 WL 7669923, at *4 (citing *Thomas*, 534 Fed. App'x at 551); *Gibbs*, 2020 WL 7022487, at *5 ("The ALJ's comment that the 'claimant has indicated pain in both feet, but I did not note an inability to ambulate or even use of an assistive device,' considers only the most extreme functional limitation (inability to ambulate) without acknowledging the records above that may be consistent with a lesser but nevertheless disabling degree of impairment in the ability to walk and stand for long periods of time." (internal citation omitted)).

Consequently, the Court finds that the ALJ erred when failing to consider Robbins's pain, and thus the case will be remanded on that basis. Upon remand, the ALJ should consider Robbins's pain relating to his chronic pancreatitis and its impact, if any, on the physical RFC.

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's decision is REVERSED, and the case is REMANDED to the Commissioner in accordance with this Opinion and Order. The Clerk is DIRECTED to enter a judgment in favor of Robbins and against the Commissioner.

SO ORDERED.

Entered this 24th day of July 2024.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge